IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A ) <br> BLACK SAMSUNG CELLPHONE, MODEL ) <br> SM-G900T, BEARING SERIAL NUMBER ) <br> RV8F406FBTD AND FBI EVIDENCE ) <br> NUMBER ▓▓▓▓▓ ) | Mag. No. |

### AFFIDAVIT IN SUPPORT OF A CELLPHONE SEARCH WARRANT

Your affiant, CHAD M. FLEMING, being duly sworn, hereby states:

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of a cellphone that is currently in law enforcement possession, and the extraction from that cellphone of electronically stored information as described in Attachment B.

### I. AFFIANT'S BACKGROUND

2. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3. I have been a Special Agent with the FBI since July of 2009, where I am currently assigned to squad CR-2 at the Washington Field Office (WFO). Squad CR-2 is responsible for conducting violent crime investigations in the Washington, D.C. area. Through my employment with the FBI, I have personally participated in the investigations of hundreds of alleged violations of the criminal laws of the United States. In particular, I have investigated violent crimes including armed bank robberies, armored car robberies, car-jackings, sexual assaults, attempted murders, threats against persons, shootings, and commercial robberies. I have gained knowledge

in the use of various investigative techniques including the utilization of physical surveillance, undercover agents, confidential informants and cooperating witnesses, and investigative interviews. I have served Administrative and Grand Jury subpoenas, as well as, analyzed telephone pen register and caller identification system data, and the execution of search and arrest warrants. Through instruction and participation in investigations, I have become familiar with the manner in which criminal offenders conduct their illegal business and the methods, language, and terms that are used to disguise conversations about their activities.

## II. AFFIANT'S KNOWLEDGE, TRAINING, AND EXPERIENCE RELATING TO CELLPHONES

4. Based on your affiant's knowledge, training, and experience, a cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the phone.

5. In addition to enabling voice communications, cellular telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. In this capacity, your affiant knows that a cellphone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and personal digital assistant (PDA), and can store information for long periods of time. Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device. Even when a user deletes information from a cellphone, it can sometimes be recovered with forensics tools.

6. In your affiant's training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Your affiant also knows that those involved in criminal activities take, or cause to be taken, photographs of themselves, their associates, property derived from their criminal activities, and their products, on cellular telephones.

7. Your affiant has consulted with forensic cellphone examiners who regularly conduct examinations of cellphones and has learned that conducting cellphone examinations is a highly technical process using specific tools for which the examiners receive training. During the extraction process, examiners are not able to parse the data in specific date ranges or to limit the search to an earlier date range. In some cases, deleted files or fragments of files may not contain date and time stamps. As a result, examiners are typically unable to extract cell phone contents only within a specified date range

8. Analyzing electronic handheld devices for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. Such devices utilize a vast array of different operating systems, software, and set-ups. The variety of hardware and software available requires even experts to specialize in some systems and applications. Thus it is difficult to know prior to the search which expert possesses sufficient specialized skill to best analyze the system and its data. No matter which system is used, however, data analysis protocols are exacting scientific procedures, designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Since electronic evidence is extremely vulnerable to tampering or destruction (either from external sources or

from destructive code imbedded in the system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis. Furthermore, there is often no software tools designed for forensic searches of particular handheld devices. Thus, searching for and retrieving data from a device is even more complicated than searching a computer, even if the device has a much smaller memory capacity than a computer. For the foregoing reasons, the device will be removed from the searched premises if the agent deems it necessary in order to conduct an efficient, complete, secure, and accurate search of the device

9. Searching the device for the evidence described above may require a range of data analysis techniques. In some cases, it is possible for agents to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. For example, agents may be able to execute a "keyword" search that searches through the files stored in a computer for special words that are likely to appear only in the materials covered by a warrant. Similarly, agents may be able to locate the materials covered in the warrant by looking for particular directory or file names. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide files and directories; encode communications to avoid using key words; attempt to delete files to evade detection; or take other steps designed to frustrate law enforcement searches for information. These steps may require agents to conduct more extensive searches, such as scanning areas of the device's memory not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, your affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described above.

### III.   FACTUAL BACKGROUND AND PROBABLE CAUSE

10. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

11. On Wednesday, July 22, 2015, at approximately 1:06 p.m., a male subject robbed the Wells Fargo Bank located at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Southeast, in Washington, D.C. During the course of the proceeding investigation, a witness, W-1, advised that IT called the unknown suspect to IT's teller station. Once at the station, the unknown suspect presented a note, while stating "hurry up" in a calm voice. The note indicated that the suspect was armed and demanded money from the teller. W-1 called out to a co-worker and the suspect stated, "hurry up, I am armed." W-1 grabbed twenty dollar bills which totaled $840.00 of FDIC insured money and gave them to the unknown suspect. After receiving the FDIC insured money, the unknown suspect walked out of the bank and headed eastbound through the parking lot of the Wells Fargo Bank. W-1 activated a silent alarm and law enforcement arrived shortly thereafter. Surveillance video captured portions of the incident. FBI and Metropolitan Police Department Reward Posters were generated with still shots of the suspect.

12. A witness, W-2, viewed a reward poster of the suspect. W-2 advised that the unknown suspect that is depicted in the photograph of the reward poster was Ronald Roberson Jr., date of birth, ▮▮▮▮▮▮▮▮. W-2 also provided the cell phone number of Mr. Roberson which was 240-696-▮▮▮▮.

13. W-3, a probation officer, who regularly sees Mr. Roberson, viewed the bank surveillance photographs and stated that IT was 98% sure that the individual depicted in the photograph is Ronald Roberson, date of birth, ▮▮▮▮▮▮▮, address, ▮▮▮▮▮▮▮ Southeast, PDID No., ▮▮▮▮▮▮, and phone number 240-696-▮▮▮▮. An inquiry into an MPDC database,

showed 240-696-██ as being subscribed to someone else other than Ronald Roberson. W-4 was also interviewed. W-4 identified the unknown suspect as Ronald Roberson, someone IT has known for approximately three years. W-4 also stated that Mr. Roberson operated the cell phone that carried the phone number 240-696-██.

14. On August 7, 2015, U.S. Magistrate Judge Alan Kay issued an Order in U.S. District Court matter 2015-mc-1030-AK that required service provider T-Mobile to produce, among other items, cell site date for the phone bearing number 240-696-██ for July 1, 2015 through July 31, 2015.

15. Cell site records produced by T-Mobile establish that Roberson's cell phone pinged off a T-Mobile tower closet to the bank 96 minutes before the approximate robbery alarm. Roberson's cell phone was not active during the time of the robbery, which could be explained as it was deliberately turned off or that Roberson was in a location with absolutely no signal, for example, a basement. It was turned on again 22 minutes later at 1:28 pm with a call pinging in the vicinity of ████████████████, Southeast, Washington D.C. In the 30-day period of data provided by T-Mobile, Roberson's cell phone never again placed or received a call that pinged off the tower nearest to the bank.

16. On September 22, 2015, Roberson was indicted by a grand jury on the charge of bank robbery, in violation of 18 U.S.C. § 2113(a) in U.S. District Court matter 2015-cr-121-RJL. Pursuant to an arrest warrant that accompanied the Indictment, Roberson was arrested on October 15, 2015, and has been held without bond pending trial. In a search incident to arrest, a cellphone was recovered from the Roberson's person.

IV. **APPLICATION**

17. Rule 41 of the Federal Rules of Criminal Procedure permits the Government to search, analyze, and test electronic devices that are evidence of crime, instrumentalities of crime, and/or fruits of crime. The property sought to be searched is a Black Samsung Cellphone, Model SM-G900T, bearing serial number RV8F406FBTD and FBI Evidence item number ▇▇▇▇▇▇▇▇▇▇, which is located at the FBI Washington Field Office, 601 4th Street, N.W., Washington, D.C. (hereinafter the "Device"). The Device is currently in the lawful possession of the FBI. It came into the FBI's lawful possession following the Defendant's arrest, as the Device was on his person. Your affiants knows that the Device has been stored at the FBI Washington Field Office in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

18. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.

19. Based upon the above-referenced facts, there is probable cause to believe that there are fruits and evidence of a bank robbery, in violation of 18 U.S.C. § 2113(a), that will be found within the Device. Specifically, in this case the Device will contain any phone calls and text messages which relate to the planning and execution of the bank robbery, the individuals Roberson contacted before and after the bank robbery, his movements before and after the bank robbery, and his potential use of the proceeds of the bank robbery. The Device may also contain photographs of the bank robbery prior to the robbery to show planning, the proceeds of the bank

robbery, items purchased with the proceeds of the bank robbery, or identify individuals who may know Roberson and/or be aware of his whereabouts prior to and after the bank robbery.

20. Because this warrant seeks only permission to examine the Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V. CONCLUSION

21. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

_____
CHAD M. FLEMING
Special Agent, Federal Bureau of Investigation

Subscribed and sworn before me this ___ day of March, 2016.

_____
G. MICHAEL HARVEY
United States Magistrate Judge
for the District of Columbia

## ATTACHMENT A

The property to be searched is a Black Samsung Cellphone, Model SM-G900T, bearing serial number RV8F406FBTD and FBI evidence item number ████████████, currently located at 601 4th Street, N.W., Washington, D.C., which was seized during a search incident to arrest of the Defendant.

## ATTACHMENT B

The items to be seized are all evidence; contraband, fruits of crime, or other items, used in the commission of a Bank Robbery, in violation of Title 18, United States Code § 2113(a), including, but not limited to: call logs, phone books, photographs, voice mail messages, text messages, images and video, and any other stored electronic data:

(i) reflecting the preparation for, and commission of, a violation of 18 U.S.C. § 2113(a);

(ii) identifying clothing and attire worn during the commission of the violation of 18 U.S.C. § 2113(a) as shown in bank surveillance video, prior to, during, and immediately after the commission of the violation of 18 U.S.C. § 2113(a);

(iii) identifying the physical and facial features of the individual committing the violation of 18 U.S.C. § 2113(a) as shown in bank surveillance video prior to, during, and immediately after the commission of the violation of 18 U.S.C. § 2113(a);

(iv) identifying locations where the individual committing the violation of 18 U.S.C. § 2113(a) traveled to before and after the commission of a violation of 18 U.S.C. § 2113(a), and in preparation for the commission of a violation of 18 U.S.C. § 2113(a);

(v) reflecting the ownership and use of the item identified in Attachment A by the individual committing the violation of 18 U.S.C. § 2113(a);

(vi) reflecting communications between the individual committing the violation of 18 U.S.C. § 2113(a) and other individuals, discussing the commission of the violation of 18 U.S.C. § 2113(a), the need for proceeds, which were ultimately derived from the commission of the violation of 18 U.S.C. § 2113(a), and the location of the individual committing the violation of 18 U.S.C. § 2113(a) during the time of the violation, and on other dates at the same time;

(vii)   reflecting communications between the individual committing the violation of 18 U.S.C. § 2113(a) and other individuals who may have assisted or provided support in the commission of the violation of 18 U.S.C. § 2113(a);

(viii) documenting or containing evidence of the obtaining, secreting, transfer, expenditure and/or the concealment of assets derived from the commission of the violation of 18 U.S.C. § 2113(a); and

(ix)   documenting or containing evidence of the purchase of items from the assets derived from the commission of a violation of 18 U.S.C. § 2113(a).